The next case is number 06-1068, Brother International v. United States. Ms. Friedman. Thank you, Your Honor. May it please the Court. The court below made a number of findings in favor of the plaintiff appellant in this case that, in our view, should have decided the case differently. The court below was persuaded by the testimony that it heard from plaintiff appellant's witnesses that the customs broker, in his effort to assign a classification to the subject merchandise, lacked the requisite knowledge that he needed about the product in order to be able to properly classify the product. Another of plaintiff appellant's witnesses, who at the time served as the director of marketing and was responsible for bringing out what was a new product coming onto the to classify this product, who did not understand the development background and the history and the intended use of the product, which is, by the way, referred to as a multi-function center. Well, it was agreed that there was a mistake of fact. Yes, Your Honor. And reading to that point of the lower court's decision, one would have been reasonably justified in expecting that that would have resolved the case in favor of the plaintiff appellant. So why did he conclude there was also a matter of legal interpretation because they used legal documents in connection with the process? Well, as I understood the opinion as it was written, the court below continued, after finding that there was a mistake of fact that should be remedied under 19 U.S.C. 1520C1, that because the customs broker who was attempting to prepare the proper entry documentation used a proper legal analysis, which he implied to a misapprehension of the facts as he had been informed of the facts, somehow that turned a mistake of fact into an interpretation of law. And it's still not clear to me to this day why, and it appears from the way the decision was written, that if the broker, using those incorrect facts, which he believed to be correct, had used an improper legal analysis, but had arrived at the same wrong classification, that plaintiff would have prevailed before the court below. And I can't explain why the court said what it said after the court found that a mistake of fact that should be remedied under 520 had been established by the testimony, and that doing a correct legal analysis on the basis of applying those wrong facts resulted in a mistake of law. Mr. Green, the government, and let's see if you agree with me on this, the government, you've correctly, I think, recited the reasoning of the Court of International Trade as to why there was a mistake of law. I mean, you disagree with that, but I think you've accurately stated what the court said. In its brief, the government seems to go off, at least in part, on a slightly different track by saying that there was also a mistake of law in determining, that they're saying there was a mistake of law in determining what the primary function of the imported product was. Did you get that sense? I read that in the government's brief. They're saying, well, even if you don't agree with the Court of International Trade, there was also a mistake of law that took place when the determination was made as to the primary purpose, or the lack of primary purpose of the imported product. Did you read it that way? They make that argument. I believe I understand what arguments you're referring to that the government was making, and it's quite inconsistent because if you look at the red brief on page 13, they state correctly that a determination of principal function or essential character is a determination of law. And then two pages later, they have this paragraph that begins with the phrase, assuming the premise that a determination of principal function or essential character is a determination of fact, it is also a mistake of law. Isn't it the case that they changed their theory here? This is along the same lines as what Judge Scholl was asking about. As I understand the customs ruling, they were saying, well, you knew what the equipment was, what the features were, and your only doubt was a legal one as to what the meaning of principal was, and that therefore it was a mistake of law. Am I understanding correctly that the government changed its theory here? Well, I think the government's brief is quite odd in that it doesn't necessarily change its theory. It basically tries to ignore the decision of the court below. So it's continuing to push the earlier theory, that they knew what the stuff was, but their only doubt was about what principal meant in the statute. Well, Your Honor, I would disagree with that statement slightly because I think what their argument that they tried to make is that they wrote this administrative ruling, which determined that there was no mistake of fact, and therefore there is no remedy under 520. Their ruling is directly contrary to the finding of the court below that there was a mistake of fact. And they're asking this court to give deference to an administrative ruling that was written two and a half years after this case was started in the court below. So it's clearly a self-serving document that is directly contrary to the findings of the court below. And if that's their theory to prevail in this case, then it should not be sustained. Mr. Remini, you're saying I'm looking at the, on page, as you say, page 13 of the red brief. They say the determination of the essential character of a good pursuant to GRI 3 or of a principal function of a composite machine pursuant to note 3 to section 16, HTSUS, is a legal conclusion on which proper tariff classification is based. Is that correct? I mean, it would seem to me that if you're determining the proper function, I mean, the primary function of a machine, that's a fact issue. Well, I think that statement that they make is actually correct. I agree with it. I think, but I think discovering the facts about the machine does not necessarily lead you to the answer as to what the principal function of that machine is. I would have thought you would have disagreed with that statement. I do not, Your Honor, because I don't think that principal function is necessarily determined by being able to compile a set of facts or statistics or characteristics or whatever about the product that you're looking at. Because principal function is interpreted by explanatory notes and a significant case law. Let me put it this way. You could have a mistake of fact about principal function in the sense that you don't know as a factual matter what the principal function of the device is. And you say that's the factual error here and that the Court of International Trade made a finding in that respect. You could also, in another case, have a doubt as to what the statute means when it talks about principal function. As applied to those facts. Well, or just in general what it means. Does principal mean 51 percent? Does it mean 75 percent? There could be a doubt about the meaning of the law. But I think what you're saying is that there isn't any evidence in this record to support the government's contention that there was any doubt about the meaning of the law as opposed to the factual nature of the device. Is that correct? That's correct, John. That's correct. I agree with that. And I think when the government goes on in its brief afterwards to try to suggest that the determination of principal function or essential character is a mixed question of fact and law. And it's not. Because the determination of principal function, as you point out, is something that is governed by specific legal standards and by case law. It's not necessary. By knowing what the facts are, you can't necessarily apply the legal standards without doing the proper legal analysis. The factual determinations about what the characteristics of the product are is a separate inquiry than the legal determination of principal function or essential character. So you're – oh, I'm sorry. No, I was really going to ask if you could just focus precisely on the error that you believe was made for which you seek reversal. In my reading of the decision of the court below, the error was that the court improperly decided that because the customs broker did a correct legal analysis – in other words, tried to classify the product after whatever inquiry was done in order to determine the amounting to a construction of law or a mistake of law. Even though we never misunderstood the law. He correctly understood the law. All along. All along. Correct. And this court has said in G&R Produce that if you give that interpretation to the statute, that it's rendered meaningless because every 520 case is brought on a claim that there has been an incorrect liquidation. Your point, Ms. Freeman, here is that – and I guess it speaks to both Judge Newman's question and also the discussion we were having about the material at page 13 of the government's brief is that the controlling factor here is that there was a mistake of fact and the nature of the mistake of fact was a misunderstanding as to the operation of the machine. And to the genesis of the machine, which was very significant, because if a party did not understand that essentially this was a print engine to which certain other functionality had been added but was quite subsidiary to the print engine, that there was no way that they could arrive at a proper classification. And that was very critical to – So, lacking the understanding, Mr. – the broker – name began with a P. I can't pronounce it. I'm puzzled. The broker went to sort of the catch-all provision. The broker went to the default. And you're saying if his understanding of the machine had been correct, he had gone to the right provision. Yes. If he had all the requisite knowledge that was needed, as was testified before the court below, the development background, the history, the intended use, yes, then – and if he had come to the conclusion that he had, then we wouldn't have had a mistake with that. But he was not – he was not aware of the facts that he needed to classify the product. Okay. Let's hear from the other side. Good morning, Your Honor. Mr. Stratford. I'd like to just briefly dwell on this issue about the Custom Service ruling and the brother's claim that it shouldn't receive no deference. They point out that the ruling, which was issued on September 2002, was two years before the case – or after the case had started and therefore – It proceeds on a different theory than the court adopted here, doesn't it? Proceeds on the theory that there wasn't a mistake of fact. The theory that they relied upon was that brother had relied upon the so-called Lanier ruling, and therefore that was a mistake in the construction of the law. But the – this case is a consolidated case, and this ruling was issued prior to the initiation of the companion case. So it was not a ruling in which went back and looked at an existing case. The facts are very much similar in the companion case, the consolidated case, and the time of importation was roughly the same. Let me go now – But basically that ruling, the 2002 ruling – Yes. – reached one conclusion about the fact, which was then rejected by the Court of International Trade, right? It said they didn't believe there was a mistake of fact, but they did say there was a mistake of law. In essence, a mistake of law would trump the mistake of fact because of the statute. And they said the mistake of law, which we endorse here, and we brought before the Court of International Trade, and the Court of International Trade also adopted, was that the brother's broker relied upon the Lanier ruling in classifying the MFCs in issue. In general, the GRIs direct that you look at the GRIs in classifying any product, and first you look at the headings, you look at the section notes and the heading and the subheading notes, the chapter notes, and then if nothing is dictated otherwise, then you go to the rest of the GRIs like GRI 1, 2, and 3, et cetera. But Mr. – but Ms. Friedman would say, I think, Mr. Trafford, that you go to the – in the proper – in the ideal situation, you go to the GRI armed with a correct understanding of the device or the product at issue. Well, I think that's certainly the case. Certainly we do that. But the first thing that comes – Or didn't the court below find – the CIT, didn't the CIT find here that that correct understanding was lacking? Well, I think that the court below found that the broker did not know what the essential character of this composite machine was, and it didn't know what the principal function was. It felt it didn't have a principal function. And it felt that no component gave it its essential character. But when you look at Section 16, Note 3, this says, unless the context otherwise requires, composite machines should be classified – I believe you have some of the words – should be classified according to the component which performs the principal function. So that's the first thing you looked at, according to the GRIs. Yeah, but was there any testimony in this record that the representatives of Brother didn't understand the law and had a misapprehension about what the law was? Well, I think that's true, because they didn't, for instance, go to this Note 3 which talks about the principal function. Yeah, but I don't think you're answering my question. Is there any testimony from anybody that they misunderstood the law at the time they were making this original classification decision? Well, no, I don't think there was. There was no testimony. I mean, that would say, well, okay, it was a mistake of law, and I lose the case. I think it's – you wouldn't find testimony like that. But where they misunderstood the law was in interpreting these terms. How do we know that – so if there was no testimony to that effect, how do we know that there was a mistake about the law? Not from the witnesses, Your Honor, no. Okay, but fine. But where else – what's the other evidence that leads to that conclusion that there was a mistake? Well, since the principal function in Note 3 is not defined, that's a statutory interpretation, and you have to say, well, what is the meaning of principal function within the meaning of Section 16? And Customs, in their August 1997 ruling, which is provided at the addendum at page 8, they determined in that case, August 1997, the high-quality 600 by 600 DPI laser output at printage, in our opinion, dictates the principal function of that machine. So essentially, it was a fact-intensive inquiry by Customs which led to determination, then, of what the principal function, which is a legal term, and the term set forth in this Note 3. Now, the broker, in the course of determining that the machine had no principal function, looked at the Lanier ruling. The Lanier ruling has, in fact, a citation to 300 DPI print resolution. The broker testified that he had received information on the DPI for the machines that he was classifying, and then when one looks at a ruling here in which Customs said, well, for this composite machine, and the machine he was classifying was a composite machine, it had the exactly same 300 DPI. I think it would be natural for him to assume that, yes, this reinforces my decision that it does not have a principal function. Now, in the explanatory notes for Note 3 of Section 16, it indicates that one goes to GRI 3C if the principal function is not known. But before one goes to GRI 3C, one would have to go, in turn, prior to that, to GRI 3B, which provides, in essence, the essential character test. Now, essential character is not defined either, but this is a statutory term, and one trying to determine what the essential character of a composite machine is necessarily has to ask the question, well, what is the meaning of essential character within the contemplation of GRI 3? Plainly, that is a fact-intensive inquiry, and the explanatory notes for GRI 3B indicates that the factor which determines essential character can vary. It might depend, for example, on the components, its value, the role of that component. But the final answer you come down to, then, is a legal conclusion, just as in the— But wouldn't it be the case, Mr. Stratford, that you're not in the universe of a legal conclusion under the case law, if you go into the analysis you've just described, and the machine has 25 components, but you don't understand how they work? I mean, you have to understand how the machine works in order to conduct the analysis that you've just described. And if you don't understand how the machine works, you're not in the legal analysis framework under the case law. Well, it might certainly be a valid question as to what extent the knowledge of that machine is. In this case— But here we have a finding that there was a mistake as to the knowledge about the machine. As to the knowledge of its essential character and primary function, not just about the machine in general, because they knew what the DPI was. They knew that it was three separate machines. It was a fax, a printer, and a copier. They had the line art for this machine, which gives information, like I just mentioned, the DPI, the, say, print speed. Now, since these initial machines were laser-based, a laser printer, and it's not clear, of course, exactly what all the parameters set forth in the line art were, because that was lost. But it would be certainly reasonable to conclude that laser was set forth in the line art if you put down, for instance, DPI. But you're not disputing that there was a mistake of fact? No. Certainly, we agree. And as the Ford Motor Company case showed, a mistake of fact can also be a mistake of law. And we believe this is a case in which there was both a mistake of fact and a mistake of law, and a mistake in the construction of law, identical things. And in this case, pursuant to the statute, the mistake in the construction of the law trumps the mistake of fact. Has this statute now been repealed? It has, Your Honor. What's the effect of that? As I understand it, the time to file a case has been extended to six months, rather than the previous 90 days. And the one-year period then for the 1520C has been eliminated. But so this case would still, in other words, would you still be operating under the 1520C provision with respect to an entry, with respect to products prior to December of 04? This was, these liquidations took place in 1996 and 97. So in other words, this case still has significance. Yes. Well, significant in the fact that it's still a valid- For a backlog, a certain backlog. Right. One of the things that, and I looked and it appeared at least, maybe we didn't look in the right place, that there are regulations still in effect with respect to, that sort of dovetail with this? I can't really speak to that, Your Honor. I don't think that really affects this case at all. Oh, no, I understand. I mean- It could well be that they still are in existence, regulations, but it could be, there could be some situations where liquidations, say, have been held up, maybe stayed, there could be sort of maybe an anti-dumping case or- You're saying that for a time, at least for a certain period of time, there will be cases coming before Customs or coming before the CIT and perhaps this court under the old 1520 C? That's possible, Your Honor, but I'm not aware of any cases. And I think all these cases would probably come through our office in the Justice Department of New York City. So this could be one of the, maybe perhaps the last case. Okay. Okay. Okay. Thank you, Mr. Stratford. Ms. Friedman, you have some rebuttal time. Ms. Friedman, I just had one question, and I, you'd said, I think the last thing you said before you sat down at your opening, at the end of your opening argument was that the customs broker was not aware of the facts needed to classify the product. What facts were you, to what facts were you referring? The customs broker did not understand that this was basically a laser printer that had already been put out in the market by Brother the year before, and that Brother, in an effort to find other applications for this laser printer, which was a very expensive development project within their company, had added certain types of functionality to the laser printer that it would allow it to make a copy as well as print, that would allow it to receive effects in addition. They did not build a completely new article. It's not, as Mr. Stratford described it, three machines that they put together. It was a laser printer to which, for example, to make the copy, all you really needed to do was put a copy button on the machine. To make it into a fax machine, you needed to put a keypad and a fax modem, and that created the ability for it to function as a fax machine. But in all of those functions, the primary component that enabled the machine to carry out those functions was the print engine. The print engine created the prints, created the copies, and created the facsimile copies that were coming through the telephone. And that was the information that the customs broker was lacking. He didn't understand the significance of the role, you're saying he didn't understand the significance of the role of the print engine. And how significant it was, that's correct. And the fact that he had certain little details, like the DPI, that's a totally insignificant fact as an example. And Mr. Stratford mentions that the Lanier ruling in 1994 referred to a DPI, which is a standard of sharpness in the print that's produced by the machine, of 300. The ruling letter that Brother received in 1997 mentions a machine that has a DPI of 600. And all that is telling you is that in the intervening four years, the product, the quality of the output of this product had improved. But if you were bringing in a printer in 1997 that had a DPI of 300, you probably would have not, would have gotten a different result as to classification, because the analysis of that machine would have said that is not a state-of-the-art printer. And therefore, its functionality as a printer perhaps does not predominate over the other functionalities that the machine offers. Thank you, Ms. Friedman. Mr. Stratford, the case is taken under submission. The other cases submitted for today are submitted on the briefs.